OPINION
{¶ 1} Appellants, Klay E. Frazier and Jennifer Frazier, appeal the judgment of the Portage County Court of Common Pleas granting appellee, the city of Kent, Ohio ("City"), judgment on the pleadings; further, cross-appellants, Charley Bowman ("cross-appellant" or "Bowman") and Michael Weddle ("cross-appellant" or "Weddle"), cross-appeal the same judgment entry denying their motion for judgment on the pleadings. The following facts were set forth in the pleadings:
 {¶ 2} On April 18, 2001, the City forwarded a letter to appellants explaining its interest in purchasing the building in which appellants' barbershop was located. The City's interest was a result of an Urban Renewal Program ("Program") designed to refurbish the City's downtown area. Pursuant to the Program, the City intended to raze the building and erect a hotel/convention center in its place. Shortly thereafter the City purchased the building and alerted appellants that they would need to relocate. The City indicated that it would assist in finding a new location and provide financial support in the form of moving and other related expenses. It bears noting that appellants were not compelled to leave immediately.
 {¶ 3} On December 13, 2001, the parties entered into an agreement which obligated the City to pay all appellants' actual, reasonable, and necessary moving and related expenses. The agreement further provided that appellants would not be required to relocate until they received ninety days written notice. In addition to these terms, the agreement included a contractual release discharging the City and its employees from all claims associated with the transaction. Appellants accepted the terms of the agreement and, over the course of their association, the City provided appellants with over $70,000 in relocation expenses. Despite having a new location from which to do business, appellants remained in the original building paying rent to the City.
 {¶ 4} On April 10, 2002, the City contacted appellants' attorney, via letter, requesting back, unpaid rent for March and April of 2002. On October 1, 2002, after receiving no rent through August, the City filed suit against appellants for back rent. In its May 30, 2003 judgment entry, the Kent Municipal Court awarded the City back rent from March to October 7, 2002, the date appellants vacated the premises.
 {¶ 5} After appellants vacated the premises, the City rented the building to Jason Fabic and Jason Manion, owners of "Jason's Barber Shop." Appellants aver the City has yet to move forth with the Program.
 {¶ 6} On November 17, 2003, appellants filed their complaint in the Portage County Court of Common Pleas. In their complaint, appellants listed the following parties as defendants: The City; Bowman, Community Development Director of the City; Weddle, Economic Development Coordinator of the City; Jason's Barber Shop; Jason Fabick; Jason Manion; and an unknown John Doe defendant. Both Bowman and Weddle were listed as defendants in their capacity as agents for the City and individually. On February 10, 2004, the City filed its answer. On June 10, 2004, appellants amended their complaint which was duly answered by defendants on June 24, 2004.
 {¶ 7} On June 30, 2004, the City moved for judgment on the pleadings pursuant to Civ.R. 12(C). On August 12, 2004, the trial court awarded the City judgment on the pleadings but denied judgment with respect to Bowman and Weddle. On August 23, 2004, appellants filed their notice of appeal. The City, in turn, filed a motion to dismiss appellants' appeal for lack of a final appealable order. On October 1, 2003, appellants filed a "Motion to Modify and Reconsideration of Judgment Entry" with the trial court. On October 4, 2004, the trial court issued a nunc pro tunc order modifying the August 12, 2004 judgment entry to read: "there is no just reason for delay" of appeal.
 {¶ 8} The City, with cross-appellants Bowman and Weddle, filed a notice of appeal from the October 4, 2004 order. The two appeals were consolidated by this court on December 13, 2004. We shall first address appellants' direct appeal.
 {¶ 9} Appellants set forth three assignments of error for our review:
 {¶ 10} "[1.] The trial court should not have granted the defendant's motion for judgment on the pleadings because the plaintiffs allege a cause of action.
 {¶ 11} "[2.] The trial court should not have granted the defendant's motion on the pleadings because the doctrine of sovereign immunity does not apply to the City of Kent and Charley Bowman.
 {¶ 12} "[3.] The trial court should not have granted the defendant's motion for a judgment on the pleadings based on the contractual release."
 {¶ 13} Because Civ.R. 12(C) motions test the legal basis for the claims asserted in a complaint, our standard of review is de novo. See State ex rel. Midwest Pride IV, Inc. v. Pontious
(1996), 75 Ohio St.3d 565, 570. In ruling on the motion, a court is permitted to consider both the complaint and the answer. Id. at 569. In so doing, the court must construe the material allegations in the complaint, with all reasonable inferences drawn therefrom, as true and in favor of the non-moving party.Whaley v. Franklin Cty. Bd. of Commrs. (2001),92 Ohio St.3d 574, 581. A court granting the motion must find that the plaintiff can prove no set of facts in support of the claims that would entitle him or her to relief. Pontious, supra, at 570.
 {¶ 14} In their first assignment of error, appellants contend the face of their pleadings assert a cause of action for fraudulent inducement. Therefore, appellants conclude the court erred in granting the City's Civ.R. 12(C) motion.
 {¶ 15} The tort of fraudulent inducement may be established by:
 {¶ 16} "(1) an actual or implied false representation concerning a fact or, where there is a duty to disclose, concealment of a fact, material to the transaction; (2) knowledge of the falsity of the representation or such recklessness or utter disregard for its truthfulness that knowledge may be inferred; (3) intent to induce reliance on the representation; (4) justifiable reliance; and (5) injury proximately caused by the reliance." Yo-Can, Inc. v. Yogurt Exchange, Inc.,149 Ohio App.3d 513, 525, 2002-Ohio-5194.
 {¶ 17} Appellants' amended complaint fails to assert a formal cause of action sounding in fraud or fraudulent inducement. Count Six of appellants' complaint alleges a claim for "false representation." "False representation," while an element of fraudulent inducement, does not, standing alone, allege a colorable claim for relief. Pursuant to Civ.R. 9(B), a claim of fraud must be pleaded with particularity. Appellants' pleadings with respect to their fraud claim are imprecise at best. Accordingly, the trial court did not err when it granted appellee's motion for judgment on the pleadings as it pertained to appellants' purported claim of fraud.
 {¶ 18} Under their second assignment of error appellants contend the City is not immune pursuant to R.C. Chapter 2744, Ohio's sovereign immunity statute, because the acts alleged in the complaint and imputed to the City were committed with malicious purpose, in bad faith, or in a reckless or wanton manner. In appellants' estimation, such allegations are sufficient to overcome the general immunity enjoyed by a political subdivision. Thus, appellants conclude, the trial court erred in granting the City's Civ.R. 12(C) motion. We disagree.
 {¶ 19} R.C. Chapter 2744 sets forth a three tiered analysis for determining a political subdivision's immunity from liability. Greene Cty. Agricultural Soc. v. Liming, (2000),89 Ohio St.3d 551, 556. First, R.C. 2744.02(A)(1) codifies the general rule of sovereign immunity, viz., that "a political subdivision is not liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function." However, this general rule is limited by R.C. 2744.02(B), which sets forth five instances in which a political subdivision is not immune. Hence, the second tier of the analysis requires a court to determine whether any of the exceptions under R.C. 2744.02(B) apply. Finally, if a political subdivision is exposed to liability through the application of R.C. 2744.02(B), a court must consider whether the political subdivision could legitimately assert any of the defenses or immunities under R.C. 2744.03. See, e.g., Greene Cty.Agricultural Soc., supra, at 557.
 {¶ 20} Here, appellants argue that the City may be held liable pursuant to R.C. 2744.03(A)(5) to the extent that Bowman acted with "malicious purpose, in bad faith, or in a wanton or reckless manner."[1] Appellants maintain Bowman, the Director of Economic Development for the City, acted in bad faith as he had a "dishonest purpose" when he induced appellants to relocate "under the false pretense that a convention center and hotel was to be built" at appellants' former business address. Appellants further assert that Bowman acted with an "ulterior motive" when he "persuaded"
 {¶ 21} appellants to vacate the premises, in order to rent the commercial space to a competing barbershop. To this end, appellants conclude, Bowman's actions were "malicious" because he intentionally planned to harm appellants' business by renting the building to a competing business.[2] Appellants' position involves a misreading of R.C. Chapter 2744.
 {¶ 22} There is no dispute as to the City's status as a political subdivision. Accordingly, the City enjoys a general immunity from civil liability as defined in R.C. 2744.02(A). Appellants did not specifically allege the City, through its employees, engaged in an activity that would lift the immunity pursuant to R.C. 2744.02(B). When a party attempts to hold a political subdivision liable for civil damages and the party's allegations fail to fall into one of the exceptions under R.C.2744.02(B), the political subdivision retains its immunity by virtue of the statutory structure. Appellants fail to argue a specific exception under R.C. 2744.02(B) on appeal; rather, appellants attempt to hold the City liable for its allegedly malicious conduct pursuant to R.C. 2744.03(A)(5).
 {¶ 23} R.C. 2744.03(A)(5) is not a workable exception to a political subdivision's general immunity; rather, stated with the turbidity of any summary pertaining to Chapter 2744, R.C.2744.03(A)(5) provides an exception to an exception to an exception. That is, pursuant to R.C. 2744.03(A), a political subdivision may assert certain listed defenses to the exceptions set forth under R.C. 2744.02(B). R.C. 2744.03(A)(5) provides:
 {¶ 24} "The political subdivision is immune from liability if the injury, death, or loss to person or property resulted from the exercise of judgment or discretion in determining whether to acquire, or how to use, equipment, supplies, materials, personnel, facilities, and other resources unless the judgment or discretion was exercised with malicious purpose, in bad faith, or in a wanton or reckless manner."
 {¶ 25} Accordingly, a plaintiff may hold a political subdivision liable for those acts executed with "malicious purpose, in bad faith, or in a wanton or reckless manner" only where he or she first sets forth a valid exception to immunity under R.C. 2744.02(B) and the political subdivision asserts immunity anew under R.C. 2744.03(A)(5). The parties did not engage in this process of requital. Accordingly, appellants' argument is an attempt to hold the City liable by rebutting a defense which was never asserted. In this respect, the City remains immune to the allegations set forth in appellants' complaint.
 {¶ 26} On the other hand, appellants could contend that their pleadings tacitly allege the City's purported Urban Renewal Project was a "proprietary," not a "governmental" function.[3] Under such a construction, the City could be held liable under R.C. 2744.02(B)(2), which provides:
 {¶ 27} "Except as otherwise provided in sections 3314.07 and3746.24 of the Revised Code, political subdivisions are liable for injury, death, or loss to person or property caused by the negligent performance of acts by their employees with respect to proprietary functions of the political subdivisions."
 {¶ 28} "Proprietary" functions and "governmental" functions are mutually exclusive concepts. R.C. 2744.01(G)(1)(a). Further, R.C. 2744.01(C)(2) sets forth a list of specific activities which are codified as "governmental" functions; in relevant part, the statute reads:
 {¶ 29} "(q) Urban renewal projects and the elimination of slum conditions[.]"
 {¶ 30} As the alleged misdoings in appellants' complaint were rooted in the City's Urban Renewal Project, the allegations in the complaint pertain to a governmental function. Therefore, R.C.2744.02(B)(2) is inapplicable to the current matter.
 {¶ 31} However, in their complaint, appellants also asserted the City, through appellee/cross-appellant Bowman, inveigled them into leaving their former business location and then "negligently allowed" a competing barbershop to run their business from the same location. While appellants failed to argue this contention in their brief, we believe it relevant to the instant appeal for such conduct is related to the City's status as a landlord, not the facilitator of an Urban Renewal Project.
 {¶ 32} A proprietary function involves:
 {¶ 33} "* * * a function of a political subdivision that is specified in division (G)(2) of this section or that satisfies both of the following:
 {¶ 34} "(a) The function is not one described in division (C)(1)(a) or (b) of this section and is not one specified in division (C)(2) of this section [i.e., those provisions defining governmental functions];
 {¶ 35} "(b) The function is one that promotes or preserves the public peace, health, safety, or welfare and that involves activities that are customarily engaged in by nongovernmental persons." R.C. 2744.01(G)(1).
 {¶ 36} Renting or leasing property is not one of the activities identified in R.C. 2744.01(G)(2); such activities are not imposed on the state as obligations of sovereignty. However, providing commercial space for purposes of leasing does promote the public welfare as it confers specific benefits on the lessees as well as those who choose to use the lessees' services. In essence, acting as a commercial lessor involves activities that are customarily engaged in by non-governmental persons, viz., private landlords who rent commercial premises to tenants.Parker v. Dayton Metro. Hous. Auth. (May 31, 1996), 2d Dist. No. 15556, 1996 Ohio App. LEXIS 2556, at 6-7.
 {¶ 37} Count Two of appellants' complaint alleges a cause of action for "Lost Income." Paragraph One of Count Two alleges:
 {¶ 38} "Defendants the City of Kent and Charley Bowman, the Community Development Director, negligently allowed a competing business to locate in the area of Defendants caused by civil legal action to be vacated by Frazier's Barber Shop, then located at 233 South Water Street in the City of Kent, Ohio."
 {¶ 39} While it is difficult to discern how the City, through Bowman, could negligently rent appellants' erstwhile business premises to another party, such hermeneutics are of no moment. When viewed in a light most favorable to appellants, Count Two alleges the City and its employee negligently caused them loss by acts relating to a proprietary function, i.e., renting a building. Consequently, pursuant to R.C. 2744.02(B)(2), appellants' complaint sets forth a valid exception to the City's immunity.
 {¶ 40} Thus, it is still possible for the City to assert a valid defense or immunity to this exception under R.C.2744.03(A); however, no specific defense was asserted in the pleadings. Because we must construe the material allegations in the complaint with all reasonable inferences drawn therefrom as true and in appellants' favor, we are constrained to reverse the trial court's determination pursuant to R.C. 2744.02(B)(2).
 {¶ 41} Appellants' second assignment of error has merit.
 {¶ 42} Appellants' third assignment of error argues the contractual release included in the December 13, 2001 contract could not operate to preclude the instant suit because it was based upon a mutual mistake.
 {¶ 43} First, appellants did not raise the issue of mutual mistake in their amended complaint. The City did raise the defense of contractual release in their answer to appellants' amended complaint; however, appellants failed to respond to this defense and accordingly, the allegation of mutual mistake is outside the scope of the pleadings. As our review of the trial court's order is confined to the pleadings, appellants' argument need not be addressed.
 {¶ 44} However, even if appellants had properly raised their mutual mistake allegation in their pleadings, we believe their argument still fails. A clear, unambiguous release is a valid defense to a civil suit alleging liability. See, generally,Tanker v. North Crest Equestrian Ctr. (1993),86 Ohio App.3d 522. Here, the provision at issue states:
 {¶ 45} "By signing this agreement, Frazier's Barber Shop does hereby for itself, its successors in interest, executors, administrators, and assigns, release and forever discharge the said City of Kent, Ohio, its Council, employees and administrators, from all debts, claims, damages, actions and causes of action whatsoever, past, present or future which can or may be ever asserted, as a result of this relocation and/or the effects or consequences thereof."
 {¶ 46} Appellants contend the contractual release is unenforceable as the parties were mutually mistaken as to its actual consequences. The law regarding the rescission or cancellation of a contractual release was discussed by the Supreme Court of Ohio in Sloan v. Standard Oil Co. (1964), 177 Ohio St. 149; in Sloan, the court observed:
 {¶ 47} "A release may be avoided where the releasor can establish by clear and convincing evidence that it was executed by mutual mistake, as between himself and the releasee, of a past or present fact material to the release, as where there was a mutual mistake as to the existence of any injury of the releasor, unless it appears further that the parties intended that claims for all injuries, whether known or unknown at the time of the execution of the release, be relinquished." Id. at paragraph one of the syllabus. (Emphasis sic.)
 {¶ 48} Thus, for a release to be avoided, the releasor must not only establish a mutual mistake regarding a material fact to the release, he or she must also demonstrate that it was not the intent of the parties to release claims for all injuries. In theMatter of Kaschalk (July 13, 2001), 11th Dist. No. 2000-G-2300, 2001 Ohio App. LEXIS 3184, at 7. Appellants meet neither of these requirements.
 {¶ 49} Mutual or bilateral mistake requires, by definition, a mistake made by both parties regarding the same fact. See,Reilley v. Richards (1994), 69 Ohio St.3d 352, 353. Appellants point to their alleged misunderstanding or lack of foresight regarding the ultimate implications of the release clause. Appellants contend, at the time the contract was entered, "the aforementioned release was not reasonable and the amount of consideration paid by defendants was inadequate when compared to the risk of unknown injuries * * *." Such issues were foreseeable at the time of signing and while appellants may be dissatisfied with their position, any alleged mistake was unilateral.
 {¶ 50} Moreover, the release, by its language covers all claims for injuries whether foreseeable or not. Appellants do not allege that the City or its representatives did not intend to obtain a release of claims for all injuries. Therefore, appellants fail to support and substantiate their mutual mistake claim.
 {¶ 51} In our view, the language of the release is clear, unambiguous, and unfettered by technical, legal abstractions. We believe the release is valid on its face and the City was entitled to judgment on the pleadings. Appellants' third assignment of error is without merit.
 {¶ 52} In their cross-appeal, cross-appellants Bowman and Weddle assert the following assignment of error:
 {¶ 53} "The trial court erred by failing to grant judgment on the pleading [sic] to defendants Bowman and Weddle based upon the clear and unambiguous language of the release."
 {¶ 54} The nunc pro tunc judgment entry on which cross-appellants' cross-appeal is based stated:
 {¶ 55} "Upon good cause being shown, the Journal Entry entered into by this court on August 12, 2004 shall be modified to read: `there is no just cause for delay' as the order effectively and finally dismisses Defendant[-Appellee] City of Kent Ohio from the case at bar."
 {¶ 56} The plain language of the judgment entry speaks only to the interlocutory order dismissing the City. The order neither mentions nor alludes to cross-appellants Bowman and Weddle. Consequently, we cannot assume the trial court intended to permit defendant's Bowman and Weddle to appeal the interlocutory order keeping them in the suit. In essence, the specific language of the trial court's nunc pro tunc order applied only to the City's dismissal. Because the trial court omitted reference to cross-appellants from the nunc prop tunc judgment entry, their cross-appeal is not properly before this court. Thus, cross-appellants' cross-appeal is therefore dismissed for lack of a final appealable order.
 {¶ 57} Accordingly, appellants' first and third assignments of error are overruled, and appellants' second assignment of error has merit. Furthermore, we dismiss cross-appellants' cross-appeal for lack of a final appealable order. Therefore, the judgment of the Portage County Court of Common Pleas is affirmed in part, as to appellants' first and third assignments of error and reversed in part, as to appellants' second assignment of error. The matter is hereby remanded for further proceedings consistent with this court's opinion.
O'Toole, J., concurs, O'Neill, J., concurs with Concurring Opinion.
[1] Although included as a defendant in appellants' complaint, appellee/cross-appellant Weddle is not identified on appeal as the source of any of the alleged conduct on which the complaint was based. Accordingly, we see no reason for Weddle's inclusion in the instant appeal.
[2] Appellants' position is curious in that it alleges the City and its employees acted maliciously or in bad faith when it rented the building to other parties; however, the pleadings indicate the City rented the building to other parties only after appellants failed to pay rent to the City from March through October. The scenario is odd: Appellants seem to suggest they were entitled to remain in the building, rent free, until the demolition took place. We find no evidence that appellants could reasonably expect such an allowance in the pleadings.
[3] We anticipate an argument of this sort given the open and liberal nature of notice pleading under Civ.R. 8. We note, however, appellants' case rests upon their claim that the City fraudulently induced them to relocate through an allegedly apocryphal Urban Renewal Program. Claims of fraud must be pleaded with particularity. Civ.R. 9(B). While appellants' pleadings regarding their fraud claim fail to meet this criterion, we shall nevertheless touch upon this issue.