OPINION
{¶ 1} Appellants, Klay E. Frazier and Jennifer Frazier, appeal from the July 27, 2006 judgment entry of the Portage County Court of Common Pleas, granting the motion for summary judgment of appellees, the city of Kent ("City"), Charley Bowman ("Bowman"), and Michael Weddle ("Weddle"). *Page 2 
 {¶ 2} The following facts and procedural history were taken from appellants' first appeal, Case Nos. 2004-P-0077 and 2004-P-0096:[1]
 {¶ 3} On April 18, 2001, the City forwarded a letter to appellants explaining its interest in purchasing the building in which appellants' barbershop, Frazier's Barber Shop, was located. The City's interest was a result of an Urban Renewal Program designed to refurbish the City's downtown area. Pursuant to the Program, the City intended to raze the building and erect a hotel/convention center in its place.[2] Shortly thereafter, the City purchased the building and alerted appellants that they would need to relocate. The City indicated that it would assist in finding a new location and provide financial support in the form of moving and other related expenses. Appellants were not compelled to leave immediately.
 {¶ 4} On December 13, 2001, the parties entered into an agreement which obligated the City to pay all appellants' actual, reasonable, and necessary moving and related expenses. The agreement further provided that appellants would not be required to relocate until they received ninety days written notice. In addition to these terms, the agreement included a contractual release discharging the City and its employees from all claims associated with the transaction. Appellants accepted the *Page 3 
terms of the agreement and, over the course of their association, the City provided appellants with over $70,000 in relocation expenses. Despite having a new location from which to do business, appellants remained in the original building, paying rent to the City.
 {¶ 5} On April 10, 2002, the City contacted appellants' attorney, via a letter, requesting back, unpaid rent for March and April of 2002. On October 1, 2002, after receiving no rent through August, the City filed suit against appellants for back rent. In its May 30, 2003 judgment entry, the Kent Municipal Court awarded the City back rent from March to October 7, 2002, the date appellants vacated the premises.
 {¶ 6} After appellants vacated the premises, the City rented the building to appellees Jason Fabick ("Fabick") and Jason Manion ("Manion"), owners of Jason's Barber Shop.[3]
 {¶ 7} On November 17, 2003, appellants filed their complaint, listing the following parties as defendants: the City; Bowman, Community Development Director of the City; Weddle, Economic Development Coordinator of the City; Jason's Barber Shop; Fabick; Manion; and an unknown John Doe defendant. Both Bowman and Weddle were listed as defendants in their capacity as agents for the City and individually. On February 10, 2004, the City filed its answer. On June 10, 2004, appellants amended their complaint which was duly answered by defendants on June 24, 2004.
 {¶ 8} On June 30, 2004, the City moved for judgment on the pleadings pursuant to Civ.R. 12(C). On August 12, 2004, the trial court awarded the City judgment on the pleadings but denied judgment with respect to Bowman and Weddle. On August 23, *Page 4 
2004, appellants filed their notice of appeal. The City, in turn, filed a motion to dismiss appellants' appeal for lack of a final appealable order. On October 1, 2004, appellants filed a "Motion to Modify and Reconsideration of Judgment Entry" with the trial court. On October 4, 2004, the trial court issued a nunc pro tunc order modifying the August 12, 2004 judgment entry to read: "there is no just reason for delay" of appeal.
 {¶ 9} The City, with cross-appellants Bowman and Weddle, filed a notice of appeal from the October 4, 2004 order. The two appeals were consolidated by this court on December 13, 2004.[4]
 {¶ 10} While the appeal was pending, on January 18, 2005, Fabick, Manion, and Jason's Barber Shop filed a motion for summary judgment. Appellants filed a reply and brief in opposition to the motion for summary judgment on January 31, 2005. Fabick, Manion, and Jason's Barber Shop filed a response on February 8, 2005.
 {¶ 11} In her December 20, 2005 decision, the magistrate granted the motion for summary judgment of Fabick, Manion, and Jason's Barber Shop. Appellants filed objections, and Fabick, Manion, and Jason's Barber Shop filed a response in opposition to appellants' objections. The trial court adopted the magistrate's decision on January 18, 2006, and granted summary judgment in favor of Fabick, Manion, and Jason's Barber Shop. On February 8, 2006, appellants filed a "Motion to Modify and Reconsideration of Judgment Entry" to include the language "there is no just reason for delay," which was denied by the trial court on March 10, 2006. *Page 5 
 {¶ 12} On May 31, 2006, the City, Bowman, and Weddle filed a motion for summary judgment. Appellants filed a reply and brief in opposition on June 26, 2006. On July 14, 2006, the City, Bowman, and Weddle filed a reply.
 {¶ 13} Pursuant to its July 27, 2006 judgment entry, the trial court granted the motion for summary judgment of the City, Bowman, and Weddle. It is from that judgment that appellants filed a timely notice of appeal and make the following assignment of error:[5]
 {¶ 14} "The trial court erred in granting all named defendants motion for summary judgment."
 {¶ 15} In their sole assignment of error, appellants argue that the trial court erred in granting appellees' motions for summary judgment. Appellants present five issues for our review: (1) Did the trial court properly rule on the City's and its individual employees' motion for summary judgment? (2) Did the trial court properly rule on Fabick's, Manion's, and Jason's Barber Shop's motion for summary judgment? (3) Does sovereign immunity apply to the City? (4) Does the contractual release bar a cause of action against the City? and (5) Did the trial court properly review this court's order when the case was remanded after oral argument of a granting of judgment on the pleadings in favor of appellees? *Page 6 
 {¶ 16} In order for a summary judgment to be granted, the moving party must prove:
 {¶ 17} "* * * (1) no genuine issue as to any material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made." Mootispaw v.Eckstein (1996), 76 Ohio St.3d 383, 385.
 {¶ 18} The Ohio Supreme Court stated in Dresher v. Burt (1996),75 Ohio St.3d 280, 296:
 {¶ 19} "* * * the moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifyingthose portions of the record which demonstrate the absence of a genuineissue of fact on a material element of the nonmoving party's claim. The `portions of the record' to which we refer are those evidentiary materials listed in Civ.R. 56(C), such as the pleadings, depositions, answers to interrogatories, etc., that have been filed in the case. * * *" (Emphasis sic.)
 {¶ 20} If the moving party satisfies this burden, then the nonmoving party has the burden, pursuant to Civ.R. 56(E), to provide evidence demonstrating a genuine issue of material fact. If the nonmoving party does not satisfy this burden, then summary judgment is appropriate. Civ.R. 56(E). Appellate courts review a trial court's granting of summary judgment de novo. Brown v. Scioto Cty. Bd. of Commrs. (1993),87 Ohio App.3d 704, 711. The Brown court stated that "we review the judgment independently and without deference to the trial court's determination." Id. An appellate court must *Page 7 
evaluate the record "in a light most favorable to the nonmoving party."Link v. Leadworks Corp. (1992), 79 Ohio App.3d 735, 741. Furthermore, a motion for summary judgment must be overruled if reasonable minds could find for the party opposing the motion. Id.
 {¶ 21} The law favors a citizen's right to trial by jury except in cases where reasonable minds can come to but one conclusion. One must, if intellectually true to the Civ.R. 56 analysis, assume as true all facts in evidence on behalf of the non-moving party. Summary judgment is not a case management tool to be utilized by trial courts, but must be used sparingly. The trial court may not engage in a weighing of the evidence or a determination of whether a party may be successful at trial in meeting its ultimate legal burden. Once evidence is presented by the non-moving party as to any element of the claim, the final determination of whether a plaintiff or defendant is ultimately successful lies in the exclusive control of the finder of fact at trial.
 {¶ 22} In their first issue, appellants allege that the trial court erred by granting summary judgment in favor of the City and its employees, Bowman and Weddle. Appellants argue in their brief that the City fraudulently induced them to accept relocation assistance and move from a well-established location with the understanding that the building would be demolished to make way for the proposed project. Appellants also contend that the City misrepresented facts which should have precluded the trial court from granting its motion for summary judgment. We disagree.
 {¶ 23} The tort of fraudulent inducement may be established by:
 {¶ 24} "* * * (1) an actual or implied false representation concerning a fact or, where there is a duty to disclose, concealment of a fact, material to the transaction; (2) *Page 8 
knowledge of the falsity of the representation or such recklessness or utter disregard for its truthfulness that knowledge may be inferred; (3) intent to induce reliance on the representation; (4) justifiable reliance; and (5) injury proximately caused by the reliance."Yo-Can, Inc. v. The Yogurt Exchange, Inc., 149 Ohio App.3d 513,2002-Ohio-5194, at ¶ 42.
 {¶ 25} Based on the record before us, we see no questions of material fact which would affirmatively establish that Frazier's Barber Shop was fraudulently induced to enter into the relocation agreement. The facts do not suggest that the City, through Bowman and/or Weddle, made a promise to appellants to build a hotel/convention center with the intent to never perform.
 {¶ 26} Appellants failed to provide any evidence to support their claims during the summary judgment briefing. Although appellants provided an affidavit from appellant Klay Frazier in support of their opposition brief, it failed to present any differing facts.
 {¶ 27} Appellants' first issue is without merit.
 {¶ 28} In their second issue, appellants argue that the trial court erred by granting Fabick's, Manion's, and Jason's Barber Shop's motion for summary judgment. Appellants allege the following: trade secrets existed; Fabick, Manion, and Jason's Barber Shop used the trade secrets for their own pecuniary benefit, to the detriment of appellants; Fabick, Manion, and Jason's Barber Shop engaged in false and misleading advertising; appellants presented an issue of material fact surrounding a claim for intentional infliction of emotional distress; and Fabick, Manion, and Jason's Barber Shop were not entitled to summary judgment on appellants' claim for punitive damages. We disagree. *Page 9 
 {¶ 29} With respect to trade secrets, R.C. 1333.61(D) states:
 {¶ 30} "Trade secret' means information, including the whole or any portion or phase of any scientific or technical information, design, process, procedure, formula, pattern, compilation, program, device, method, technique, or improvement, or any business information or plans, financial information, or listing of names, addresses, or telephone numbers, that satisfies both of the following:
 {¶ 31} "(1) It derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use.
 {¶ 32} "(2) It is the subject of efforts that are reasonable under the circumstances to maintain its secrecy."
 {¶ 33} A customer list is a trade secret "if the owner of the list has taken reasonable precautions to protect the secrecy of the listing to prevent it from being made available to persons other than those selected by the owner to have access to it in furtherance of the owner's purposes." Fred Siegel Co. L.P.A. v. Arter Hadden (1999),85 Ohio St.3d 171, 181-182. "There is no presumption that any particular idea imparted to or acquired by an employee is a trade secret unless the possessor takes active steps to maintain the secrecy." Water Management,Inc. v. Stayanchi (1984), 15 Ohio St.3d 83, 85-86.
 {¶ 34} In the case at bar, while working at Frazier's Barber Shop, Fabick and Manion painted an American flag on one of the walls. Customers of Fabick, Manion, and appellant Klay Frazier signed their names on the flag. When Frazier's Barber Shop moved, appellants made no attempt to paint over the signatures or to otherwise conceal *Page 10 
and protect the information. Fabick and Manion later returned to that location to open their own barbershop, and contacted the individuals listed on the flag to announce the opening of their new business.
 {¶ 35} The wall of customer signatures clearly does not constitute a trade secret. Appellants took no active steps to maintain the "secrecy" of customer names, but rather published them to the general public on a wall that was in plain view. It is irrelevant whether or not appellants believed that the building would be demolished after they moved out.
 {¶ 36} Regarding appellants' claim of false advertising, they contend that Fabick and Manion represented to customers that they were back downtown in the old shop, giving customers of Frazier's Barber Shop the belief that they were dealing with the same enterprise.
 {¶ 37} R.C. 1345.02(A) provides: "[n]o supplier shall commit an unfair or deceptive act or practice in connection with a consumer transaction. Such an unfair or deceptive act or practice by a supplier violates this section whether it occurs before, during, or after the transaction."
 {¶ 38} "* * * [I]n the absence of an express contract not to compete, an employee, upon taking employment in a new competing business, can continue to follow his chosen trade or occupation as before. The employee can even solicit the customers of his former employer and will not be enjoined from doing so as long as there is no disclosure or use of trade secrets or confidential information." Smith v. Demastus (Nov. 21, 1977), 11th Dist. No. 712, 1977 Ohio App. LEXIS 8796, at 3, citingCurry v. *Page 11 Marquart (1937), 133 Ohio St. 77, and Cord Co., Inc., v. S. P.Management Services, Inc. (1965), 2 Ohio App.2d 148.
 {¶ 39} Based on the evidence before us, Fabick and Manion represented that they opened a new barbershop, Jason's Barber Shop, in the former location of Frazier's Barber Shop. Appellants cannot state a specific instance nor demonstrate any evidence that Fabick and Manion engaged in false advertising. Fabick and Manion did not engage in any unfair or deceptive act in advertising the opening of their new business to former customers. Rather, they merely opened up a business in the same location where they once worked, and became competitors with appellants.
 {¶ 40} With respect to intentional infliction of emotional distress, this court stated in Petrarca v. Phar-Mor, Inc. (Sept. 21, 2001), 11th Dist. No. 2000-T-0121, 2001 Ohio App. LEXIS 4293, at 5-7:
 {¶ 41} "[i]n Phung v. Waste Mgt., Inc. (1994), 71 Ohio St.3d 408, 410
* * *, the Supreme Court of Ohio held that in order to prove intentional infliction of emotional distress, a plaintiff must show: `(1) that the defendant intended to cause the plaintiff serious emotional distress, (2) that the defendant's conduct was extreme and outrageous, and (3) that the defendant's conduct was the proximate cause of plaintiff's serious emotional distress.' The Supreme Court has stated that liability has been found where the conduct has been so outrageous that it goes beyond all possible bounds of decency and is so atrocious that it is `utterly intolerable in a civilized society.' Reamsnyder v.Jaskolski (1984), 10 Ohio St.3d 150, 153 * * *. For a claim alleging intentional infliction of emotional distress, the emotional distress must be serious. *Page 12 Yeager v. Local Union 20 (1983), 6 Ohio St.3d 369, 374 * * *. `Serious' has been defined as:
 {¶ 42} "`(* * *) beyond trifling mental disturbance, mere upset or hurt feelings. We believe that serious emotional distress describes emotional injury which is both severe and debilitating. Thus, serious emotional distress may be found where a reasonable person (* * *) would be unable to cope adequately with the mental distress engendered by the circumstances of the case.' Paugh v. Hanks (1983), 6 Ohio St.3d 72, 78 * * *.
 {¶ 43} "Behavior that rises to the level of intentional infliction of emotional distress must be more than aggravating. Only conduct that is truly outrageous, intolerable, and beyond the bounds of decency is actionable; persons are expected to be hardened to a considerable degree of inconsiderate, annoying, and insulting behavior. Yeager at 375." (Parallel citations omitted.)
 {¶ 44} Here, appellants cannot point to any evidence that Fabick or Manion knew or should have known that any of their actions would cause serious emotional distress. There is nothing in the record to show that Fabick and Manion were negligent or that they had the intent to emotionally harm appellants, and/or that their conduct was extreme and outrageous. Absent a non-compete agreement, good faith competition with a former employer is not unlawful.
 {¶ 45} Finally, we turn to appellants' claim for punitive damages. Actual malice is required to collect punitive damages in a tort action, and it has been defined as anger, hatred, ill will, a spirit of revenge, or a reckless disregard of the consequences or the legal rights of others. Leal v. Holtvogt (1998), 123 Ohio App.3d 51, 82. However, even *Page 13 
where actual malice has been established, punitive damages cannot be awarded in the absence of actual damages. R.C. 2315.21(B) and (C).
 {¶ 46} Here, appellants cannot demonstrate an issue of fact that Fabick and/or Manion acted with malice. There is simply nothing in the record before us to establish such a claim.
 {¶ 47} Appellants' second issue is without merit.
 {¶ 48} In their third issue, appellants contend that the doctrine of sovereign immunity does not apply to the City and its employees. Appellants stress that the City by and through its employees acted with a malicious purpose, in bad faith, and in a reckless and wanton manner in inducing them to relocate under false pretenses. We disagree.
 {¶ 49} The City is a municipal political subdivision within the definition of R.C. 2744.01(F), and is therefore entitled to immunity as provided in Chapter 2744 of the Revised Code.
 {¶ 50} The Supreme Court of Ohio in Elston v. Howland LocalSchools, 113 Ohio St.3d 314, 2007-Ohio-2070, stated at ¶ 10-12:
 {¶ 51} "[t]he process of determining whether a political subdivision is immune from liability involves a three-tiered analysis. SeeGreene Cty. Agricultural Soc. V. Liming (2000), 89 Ohio St.3d 551, 556 * * *. The first tier provides a general grant of immunity, stating that `a political subdivision is not liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function.' R.C. 2744.02(A)(1). * * * *Page 14 
 {¶ 52} "The second tier in an immunity analysis focuses on the exceptions to immunity located in R.C. 2744.02(B). * * *
 {¶ 53} "Finally, in the third tier of the analysis, immunity may be reinstated if a political subdivision can successfully assert one of the defenses to liability listed in R.C. 2744.03. See Cater v.Cleveland (1998), 83 Ohio St.3d 24, 28 * * *. * * *" (Parallel citations omitted.)
 {¶ 54} In the case at bar, appellants seem to suggest that they were entitled to remain in the building, rent free, until the demolition took place. However, the record shows that the City rented the building to Fabick and Manion only after appellants failed to pay rent to the City from March through October. Appellants fail to argue a specific exception under R.C. 2744.02(B). Rather, they attempt to hold the City liable for its allegedly malicious conduct pursuant to R.C.2744.03(A)(5) and (6)(b).
 {¶ 55} R.C. 2744.03(A)(5) provides: "[t]he political subdivision is immune from liability if the injury, death, or loss to person or property resulted from the exercise of judgment or discretion in determining whether to acquire, or how to use, equipment, supplies, materials, personnel, facilities, and other resources unless the judgment or discretion was exercised with malicious purpose, in bad faith, or in a wanton or reckless manner."
 {¶ 56} R.C. 2744.03(A)(6)(b) states: "[i]n addition to any immunity or defense referred to in division (A)(7) of this section and in circumstances not covered by that division or sections 3314.07 and3746.24 of the Revised Code, the employee is immune from liability unless * * * [t]he employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner[.]" *Page 15 
 {¶ 57} The definition of proprietary functions listed at R.C.2744.01(G)(1)(a) excludes from the term "proprietary function" those functions that are defined as "governmental functions." R.C. 2744.01
(C)(2)(q) lists "[u]rban renewal projects and the elimination of slum conditions" as a governmental function. Immunity for actions taken in conjunction with an urban renewal project provides municipalities with protection from civil liability. See Farra v. Dayton (1989),62 Ohio App.3d 487.
 {¶ 58} With respect to appellants' "negligent renting" claim, again, the City wanted to redevelop the downtown area as part of an urban renewal project. Thus, the City purchased the building which housed appellants' former barbershop, with the intention to raze the building. The City paid appellants' relocation costs. Because plans for the project stalled, the City temporarily leased the barbershop space rather than leave the building empty. The City rented the property at a reduced rate for the purposes of generating minor revenue and preventing vandalism. The City attached conditions to the rental agreement in order to make the property immediately available for future urban renewal. As such, the City continued to act within the ambit of the governmental function of "[u]rban renewal projects and elimination of slum conditions." R.C. 2744.01 (C)(2)(q).
 {¶ 59} Even assuming arguendo that the City was engaged in a proprietary function, appellants failed to present evidence of negligence in the renting of the property. Because appellants breached their lease with the City and were evicted, they lost any rights under the lease. Thus, the City owed appellants no duty. As such, the City was not negligent in later renting the space to Fabick and Manion. There is no evidence to support any allegation that the City, through its employees, acted with *Page 16 
malice, in bad faith, or in a wanton or reckless manner. Therefore, the City and its employees are entitled to immunity.
 {¶ 60} Appellants' third issue is without merit.
 {¶ 61} In their fourth issue, appellants stress that the contractual release does not bar a cause of action against the City because it was made by mutual mistake. We disagree.
 {¶ 62} A release is a form of contract. Garrison v. DaytonianHotel (1995), 105 Ohio App.3d 322, 325. Generally, a release of a cause of action is an absolute bar to a later action on any claim encompassed within the release. Haller v. Borror Corp. (1990), 50 Ohio St.3d 10, 13.
 {¶ 63} A mutual mistake requires a mistake made by both parties regarding the same fact. See Reilley v. Richards (1994),69 Ohio St.3d 352, 353. A mutual mistake regarding a material part of a contract can be grounds for rescission of that contract. Id. at 352. A mutual mistake of fact is present where both parties are mistaken as to a basic assumption which has a material effect on the agreed exchange of performances. Id. at 353.
 {¶ 64} The relocation agreement specifically states that the City was acquiring property as part of the Urban Renewal Program. The evidence presented establishes that the City intended, at the time the contract was made, to put a hotel/convention center at the subject location. Although the plans were later canceled or put on hold is of no consequence because mutual mistake must be based on a past or present fact at the time the parties entered into the contract. *Page 17 
 {¶ 65} The release provision is clear and unambiguous, releasing the City and its employees, Bowman and Weddle. Paragraph G provides:
 {¶ 66} "By signing this agreement, Frazier's Barber Shop does hereby for itself, its successors in interest, executors, administrators, and assigns, release and forever discharge the said City of Kent, Ohio, its Council, employees and administrators, from all debts, claims, damages, actions and causes of action whatsoever, past, present or future which can or may be ever asserted, as a result of this relocation and/or the effects or consequences thereof."
 {¶ 67} The contractual release, signed by appellants, bars their cause of action with respect to mutual mistake.
 {¶ 68} Appellants' fourth issue is without merit.
 {¶ 69} In their fifth issue, appellants allege that the trial court did not properly review this court's remand order. We disagree.
 {¶ 70} The only claim left against the City was the claim of negligence in the rental of the subject property to Fabick and Manion.
 {¶ 71} In Ohio, "recovery for negligent infliction of emotional distress [is limited] to such instances as where one was a bystander to an accident or was in fear of physical consequences to his own person."High v. Howard (1992), 64 Ohio St.3d 82, 85-86. A claim for negligent infliction of emotional distress is recognized "only where there is cognizance of a real danger, not mere fear of non-existent peril."Criswell v. Brentwood Hosp. (1989), 49 Ohio App.3d 163, 165.
 {¶ 72} Here, appellants attempt to characterize the alleged loss of their marriage, due to the instant situation, as a dangerous accident. However, there is no case law in *Page 18 
Ohio establishing a marriage breakup as a "dangerous accident." Appellants clearly fail to demonstrate that they were subject to actual physical peril, and as a result, suffered severe and debilitating emotional injuries. See Heiner v. Moretuzzo (1995), 73 Ohio St.3d 80,85-87.
 {¶ 73} Appellants' fifth issue is without merit.
 {¶ 74} For the foregoing reasons, appellants' sole assignment of error is not well-taken. The judgment of the Portage County Court of Common Pleas is affirmed.
CYNTHIA WESTCOTT RICE, P.J., TIMOTHY P. CANNON, J., concur.
[1] On July 29, 2005, in Frazier v. Kent, 11th Dist. Nos. 2004-P-0077 and 2004-P-0096, 2005-Ohio-3897, this court affirmed in part, reversed in part, remanded the matter to the trial court, and dismissed Bowman's and Weddle's cross-appeal. On or about August 9, 2005, the City filed a motion for reconsideration because of an inconsistency between this court's opinion and order for remand. On September 19, 2005, this court granted the motion for reconsideration and vacated the July 29, 2005 opinion. On October 7, 2005, in Frazier v. Kent, 11th Dist. Nos. 2004-P-0077 and 2004-P-0096, 2005-Ohio-5413, this court issued another opinion in which we affirmed in part, and reversed in part regarding the rulings that the City was entitled to immunity for a proprietary function and was entitled to judgment on the pleadings based on a release, and remanded the matter for further proceedings. This court also dismissed Bowman's and Weddle's cross-appeal, regarding the same judgment entry of the trial court, denying their motion for judgment on the pleadings.
[2] To date, a hotel/convention center has not been constructed. However, the City still intends to use the property at issue for the purpose of redevelopment.
[3] Prior to renting the building, Fabick and Manion worked as barbers at Frazier's Barber Shop.
[4] Again, this court affirmed in part, reversed in part, and remanded the matter for further proceedings, as well as dismissed the cross-appeal. Frazier, supra.
[5] On October 5, 2006, Fabick, Manion, and Jason's Barber Shop filed a motion to dismiss the appeal. Appellants filed a reply on October 11, 2006. On October 24, 2006, Fabick, Manion, and Jason's Barber Shop filed a reply to appellants' response in opposition to the motion to dismiss. On November 6, 2006, this court overruled Fabick's, Manion's, and Jason's Barber Shop's motion to dismiss. Pursuant to our judgment entry, this court indicated the following: the case was still pending as to the remaining defendants after the trial court granted summary judgment for Fabick, Manion, and Jason's Barber Shop on January 18, 2006; the January 18, 2006 order did not include Civ.R. 54(B) language; appellants correctly waited until the July 27, 2006 judgment entry dismissed the remaining defendants to file their present appeal; this court has jurisdiction to review the appealed judgment as well as the January 18, 2006 judgment entry, granting summary judgment for Fabick, Manion, and Jason's Barber Shop; and appellants' failure to attach the January 18, 2006 judgment entry to their notice of appeal does not constitute a proper basis for the dismissal of this appeal. *Page 1